**STATE of Tennessee, Appellant,**

v.

**James Howard TURNER, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 16, 1986.

Application for Permission to Appeal Denied by Supreme Court June 2, 1986.

W.J. Michael Cody, Atty. Gen., Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., John Zimmermann, Asst. Dist. Atty. Gen., Nashville, for appellant.

Edward M. Yarbrough, J. Russell Heldman, Hollins, Wagster & Yarbrough, Nashville, for appellee.

### OPINION

SCOTT, Judge.

James Howard Turner was convicted of one count of murder in the first degree and two counts of aggravated kidnapping. He received a sentence of life imprisonment for the first degree murder and forty years imprisonment for each count of aggravated kidnapping. The trial judge overruled each ground of the motion for a new trial except one. After a full evidentiary hearing the trial judge held that Mr. Turner received ineffective assistance of counsel and granted the motion for a new trial. The state

appealed to this Court and the judgment was affirmed. *State v. James Howard Turner*, Tennessee Criminal Appeals, opinion filed at Nashville, August 7, 1984. The state then sought review in the Supreme Court. Permission to appeal was denied, concurring in results only. *State v. James Howard Turner*, Tennessee Supreme Court, order filed at Nashville, December 17, 1984.

On remand Mr. Turner filed a "motion to reinstate plea offer, or in the alternative, to dismiss the indictment." The motion was argued and taken under advisement. The trial judge then issued an order giving the state fifteen days to reinstate the plea bargain offer of two years, which had been made and rejected prior to the trial. The order provided that if the state failed to reinstate the plea bargain offer within the allotted time, the case would be dismissed. The order went on to stay its effective date, in order to allow the state to appeal. The state has done so, and the question now presented is whether the trial court acted beyond the scope of its authority by ordering the District Attorney General to make the defendant a particular plea offer or suffer dismissal of the indictment. As far as we can determine, this is a question of first impression in Tennessee and everywhere.

According to this Court's opinion in the state's first appeal, Mr. Turner and his two co-defendants, Sam John Passarella and Earl Carroll, purchased bogus silver from Monte Hudson. When they learned that the silver was not genuine, they abducted Mr. Hudson and his wife at gunpoint from the parking lot of a Nashville motel. Mr. Turner forced Mrs. Hudson into his car, and Messrs. Passarella and Carroll took Mr. Hudson away in another car. Mr. Turner released Mrs. Hudson the next day. Mr. Turner and Mr. Passarella were indicted for two counts of kidnapping and their trials were severed. Mr. Carroll accepted a sentence of two years for kidnapping in exchange for his testimony against Mr. Passarella, who was convicted and received a sentence of seventy years imprisonment. Prior to Mr. Turner's trial, Mr. Hudson's corpse was discovered, and the facts indicated that he was killed by Mr. Passarella. A superseding indictment was obtained against Mr. Turner, charging him with felony murder.

Mr. Turner retained Lance Bailey, an attorney from Socorro, New Mexico to represent him. Thomas C. Binkley of Nashville was retained to serve as local counsel to deal with questions of Tennessee law. Mr. Bailey was the lead counsel. Because of concern about the trauma that Mrs. Hudson would suffer by having to testify at another trial, the state offered Mr. Turner the same plea bargain that Mr. Carroll had received. Mr. Binkley strongly recommended that Mr. Turner accept this offer, but Mr. Bailey stated that the state did not have a case and he believed that through careful cross-examination that he could show that Mrs. Hudson actually went with Mr. Turner voluntarily.

At the hearing on the motion for a new trial the trial judge concluded that Mr. Turner had received ineffective assistance of counsel from Mr. Bailey. He found that in recommending rejection of the plea bargain offer Mr. Bailey greatly understated the risks of going to trial, was overly optimistic about the outcome of the trial, and conveyed unrealistic expectations to the appellant. He found that the state's offer was extremely generous and that any competent defense attorney would have seriously considered the offer and advised his client to accept it.

This Court agreed and affirmed the granting of the new trial. On remand, counsel filed and the trial court granted the "motion to reinstate plea offer, or in the alternative, to dismiss the indictment." This extraordinary appeal pursuant to Rule 10, T.R.A.P. resulted.

■ Initially, Mr. Turner has raised a procedural challenge to the way the state framed the issue on appeal. He argues that the state wrote in its application for permission to appeal that the issue was whether the trial judge abused his discretion in issuing the order denying the state's

"motion to reconsider or clarify" the order granting the motion. The state argues in its brief that the issue is whether the trial judge exceeded the scope of his authority in issuing the original order requiring reinstatement of the plea agreement. Mr. Turner says that by framing the issue differently that the state is advancing an issue which it has already waived.

In its application for an extraordinary appeal, the state alleged that the trial court " 'has so far departed from the accepted and usual course of judicial proceedings' as to require (immediate) review of the trial court's action." This language tracks Rule 10(a)(1), T.R.A.P.

In the motion to reconsider, the state asked the trial court to "reconsider the prior order or, in the alternative ... further clarify" the previous order. The motion also sets forth the state's intention to seek appellate review of the prior order.

Thus, it is clear throughout these proceedings that the state's intention has been clearly set forth, i.e., to appeal the original order directing the reinstatement of the plea agreement. Indeed, the trial judge recognized in the original order that "the state will suffer irreputable (sic) harm and prejudice if it is not allowed to appeal the Order of this Court." Thus, the state's intention to appeal the entire action of the trial court has been clearly recognized from the beginning of this proceeding. This issue has no merit.

It is elementary that a conviction cannot stand if the defendant received ineffective assistance of counsel. The right to counsel is so fundamental that it is an "essential prerequisite to jurisdiction," the denial of which operates to render a judgment "absolutely void." *State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 288 (Tenn.1979).

■ There is no absolute right to have a plea bargain accepted. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). There is also no obligation on the state to offer any benefit or advantage to a defendant by reason of his pleading guilty, and aside from any agreement that may exist between a defendant and the state in reference to the entry of the guilty plea, the ultimate decision to accept or reject any such plea is to be made by the trial court. *Williams v. State*, 491 S.W.2d 862, 867 (Tenn.Cr.App.1972). Any plea bargain offer from the state was revocable until it was accepted by the trial court. *See: Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984). The ultimate decision whether to accept or reject a particular plea bargain agreement rests entirely with the trial court. A prerequisite to the effectiveness and enforceability of a plea agreement is its approval by the court. *State v. Todd*, 654 S.W.2d 379, 382 (Tenn.1983).

A plea bargain agreement may be scrutinized on appeal where enforcement of the agreement would deny the accused a fundamental constitutional right or be unconscionable and not deserving of judicial approval. *Richardson v. State*, 671 S.W.2d 865, 866 (Tenn.Cr.App.1984). When the state later breaches a plea bargain agreement, the aggrieved defendant may either seek specific performance of the agreement or ask the court to restore both parties to the status they occupied immediately before the plea was entered. However, these principles apply only after the bargained guilty plea has been accepted by the court. There is simply no authority for the proposition that a plea agreement can be enforced prior to acceptance by the court. *Metheny v. State*, 589 S.W.2d 943, 945 (Tenn.Cr.App.1979).

Remedies for the unconstitutional deprivation of the right to counsel should be tailored to the injury suffered. Rarely, however, would the remedy be dismissal of the indictment. In addition, the remedy should not unnecessarily infringe on competing interests. *U.S. v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

■ The remedy which the trial judge fashioned to neutralize the violation of the appellant's constitutional right to the effective assistance of counsel is incompatible with our rules of criminal procedure, which

specifically provide that the judge "shall not participate" in plea negotiations. Rule 11(e), T.R.Cr.P. Furthermore, the remedy fashioned by the trial judge flies in the face of all of the cited cases which hold that the plea agreements are not enforceable until they are accepted by the court.

■ Thus, the ultimate question is whether a court can require the state to make a particular plea bargain offer. We hold that courts cannot do so. Plea bargaining is a matter which lies entirely within the prosecutor's discretion. There is no requirement that the state even engage in plea bargaining, and it is well known that in many cases prosecutors simply refuse to bargain at all. Furthermore, plea bargaining is similar in form to contract negotiations. It is elementary contract law that an offer not supported by consideration may be revoked at any time prior to its acceptance. 17 CJS (Contracts) § 50, p. 706.

When ineffective assistance of counsel has been demonstrated as it was in this case, the remedy is reversal and remand for a new trial. That is precisely what this Court has already done. The trial judge's order directing the state to reinstate its prior offer was a total departure from "the accepted and usual course of judicial proceedings." Rule 10(a), T.R.A.P. Thus, the action of the trial court is reversed and the cause is remanded for trial.

DUNCAN and CORNELIUS, JJ., concur.